# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. AUSTIN, JR., | Case No. 4:21-cv-209 |
| Petitioner, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Carmen E. Henderson |
| WARDEN DONNIE MORGAN, | |
| Respondent. | |

## OPINION AND ORDER

A jury found Petitioner Michael L. Austin guilty of four counts of aggravated murder and one count of engaging in a pattern of corrupt activity. He was sentenced to life in prison without parole. Mr. Austin filed a petition for a writ of habeas corpus, asserting ineffective assistance of counsel in violation of his Sixth Amendment rights. The Magistrate Judge recommends that the Court deny his claim and dismiss Mr. Austin's petition. Petitioner objects. For the reasons that follow, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the Magistrate Judge's recommendation, and **DENIES** and **DISMISSES** the petition for a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

This petition for a writ of habeas corpus arises from a State conviction in Mahoning County, Ohio.

### A. Indictment, Trial, and Conviction

Michael Austin was indicted in a multi-count superseding indictment on May 21, 2015. (ECF No. 10, PageID #100–15.) The charges included four counts of aggravated murder with firearm specifications for the deaths of Adam Christian and Raymond R'amel Hayes (Counts 1, 4, 10, and 11); four counts of possession of a firearm while under disability (Counts 3, 6, 9, and 12); attempted murder (Count 7); felonious assault (Count 8); and engaging in a pattern of corrupt activity (Count 29). (*Id*.) On May 26, 2015, Mr. Austin pleaded not guilty to all counts. (*Id*., PageID #116.) Later, the State dismissed Counts 3, 6, 9, and 12—the counts for possession of a firearm while under a disability. (ECF No. 10, PageID #221.)

At trial, the State established that Mr. Austin was acting as an enforcer for a drug distribution network. (ECF No. 10, PageID #286–87.) Responding to a threat against another member of the network, Mr. Austin shot and killed Adam Christian. A few days after Adam Christian's shooting, the body of R'amel Hayes was found at an intersection on the east side of Youngstown. (*Id*., PageID #288.) The evidence indicated that Mr. Austin fatally shot Hayes due to concerns that Hayes was divulging information about the prior murder. (*Id*., PageID #288–89.)

### A.1. Witness Testimony

Adrian Henderson, another member of the organization, agreed to offer his videotaped testimony at trial on behalf of the State, refusing to appear live due to fear of reprisal by Mr. Austin and others. (*Id*., PageID #289.) The State trial court heard arguments to determine whether Mr. Henderson's statements could be used at trial under the forfeiture by wrongdoing exception to the prohibition on hearsay. (*Id*.)

The State trial court overruled the defense's objections and admitted both Henderson's videotaped statement and the testimony of a detective regarding his transcribed follow-up interview with Henderson. (*Id.*)

By videotaped statement, Henderson declared that Mr. Austin disclosed to him the circumstances surrounding the first murder while he and Mr. Austin were present at Henderson's residence on the night that Christian was shot. (*Id.*) Henderson recounted details of the events that he claimed Mr. Austin described to him: someone from the victim's family had planned to rob a gang member; Hayes was sent to lure the first victim out of the apartment; Mr. Austin shot the victim when he stepped out of the apartment; and Mr. Austin planned to shoot Hayes for revealing information about the first victim's murder. (*Id.*, PageID #289–90.) Also, Henderson said that he saw Hayes riding in a car with Mr. Austin on the day of his murder. (*Id.*, PageID #289.)

### A.2. Closing Arguments

During closing arguments, the State asserted that Henderson offered the jury details of Mr. Austin's role in the murders and argued that "Adrian Henderson [was] telling the truth." (ECF No. 10-1, PageID #2326.) The prosecutor emphasized that additional witnesses and ballistic evidence "corroborated on multiple counts" Henderson's account. (*Id.* PageID #2328–32.) The prosecutor maintained that, "[a]t no point was [Henderson] inconsistent. Not one single inconsistency." (*Id.*, PageID #2458.)

For his part, the defense challenged Henderson's credibility, highlighting his past criminal history and current or potential charges. (*Id.*, PageID #2409–10.)

3

Defense counsel described Henderson and other witnesses as "convicted felons who get freedom for their testimony." (ECF No. 10-1, PageID #2423.)

### A.3. Conviction and Sentence

The jury found Mr. Austin guilty on Counts 1, 4, 10, 11, and 29. (ECF No. 10, PageID #160–61.) The State trial court sentenced Mr. Austin to life in prison without parole for each aggravated murder conviction plus three years for each corresponding firearm specification; fifteen years to life for the murder conviction plus three years for the firearm specification; and eleven years for the pattern of corrupt activity conviction, with each sentence to be served consecutively. (*Id.*, PageID #161–62.)

### B. Direct Appeal

On direct appeal, Mr. Austin's counsel raised seven assignments of error, including that the trial court erred in permitting the State to play Henderson's video interview over Petitioner's objection. (*Id.*, PageID #186.) The State appellate court denied Mr. Austin's petition and affirmed the conviction and sentence on March 29, 2019. (*Id.*, PageID #311–12.). Mr. Austin timely appealed to the Ohio Supreme Court (*id.*, PageID #313), which declined to exercise jurisdiction on June 26, 2019. (*Id.*, PageID #360.)

### C. Application to Reopen

On May 10, 2019, Mr. Austin moved under Rule 26(B) of the Ohio Rules of Appellate Procedure to reopen his appeal, asserting ineffective assistance of counsel. (*Id.*, PageID #361.) He contended that his appellate counsel failed to raise two meritorious arguments on direct appeal: (1) prosecutorial misconduct by improperly vouching for a witness, and (2) jury tampering. (*Id.*, PageID #361–62, 367.) The State

4

appellate court denied Mr. Austin's application on September 17, 2017, finding no prejudice to Petitioner's substantial rights. (*Id.*, PageID #409 & #412.) For that reason, the appellate court also found no ineffective assistance of counsel. (*Id.*)

Mr. Austin timely appealed the denial of his application to reopen to the Ohio Supreme Court. (*Id.*, PageID #413.) In support, he raised the ineffective assistance of counsel claim on the same two bases as his application to reopen. (*Id.*, PageID #419–21.) On January 21, 2020, the Ohio Supreme Court declined to exercise jurisdiction. (*Id.*, PageID #433.)

### D. Habeas Petition

On January 26, 2021, Mr. Austin filed a petition for a writ of habeas corpus (ECF No. 1), asserting that he received ineffective assistance of appellate counsel for failure to raise two meritorious claims on direct appeal: (1) prosecutorial misconduct, and (2) jury tampering. (*Id.*, PageID #5–6.)

Pursuant to Local Rule 72.2, the case was referred to a Magistrate Judge. On November 8, 2023, the Magistrate Judge issued a Report and Recommendation that the Court deny the petition on the merits. (ECF No. 24, PageID #2600.) Petitioner objected to the Report and Recommendation (ECF No. 26, PageID #2624), specifically to the Magistrate Judge's determination that Petitioner failed to establish a meritorious claim of ineffective assistance of appellate counsel regarding prosecutorial misconduct. (*Id.*, PageID #2625.) Petitioner maintains that prejudicial error occurred when the State vouched for the credibility of Henderson's testimony in closing, even though Petitioner was unable to test the witness's credibility through

5

cross-examination. (*Id.*, PageID #2626.) But for this error, Petitioner contends that the outcome of his appeal would have been different. (*Id.*, PageID #2627.)

## STANDARD OF REVIEW

A district court judge may designate a magistrate judge to submit "proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by local rule, *see* LR 72.2. When reviewing a report and recommendation, if a party timely objects, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues–factual and legal– that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

On review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Importantly, a court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it. Accordingly, the Court's task is to review the Magistrate Judge's report and recommendation *de novo*, based on the specific objections Petitioner raises.

## GOVERNING LEGAL STANDARD

Where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States," he is entitled to a writ of habeas corpus. 28 U.S.C. §§ 2241(c)(3) & 2254(a). At bottom, the writ tests the fundamental fairness of the State court proceedings resulting in the deprivation of the petitioner's liberty. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle c. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A State court adjudication is "contrary to" Supreme Court precedent under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives

7

at a different result. *Williams*, 529 U.S. at 405. "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under section 2254(d)(1), an unreasonable application of federal law is different than an incorrect application of federal law. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410). A State court adjudication involves "an unreasonable application of" Supreme Court precedent under Section 2254(d)(1) in one of two ways: (1) if the State court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular State prisoner's case; or (2) if the State court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See Williams*, 529 U.S. at 407.

## ANALYSIS

Petitioner timely filed his petition for a writ of habeas corpus and exhausted his claims. (*See* ECF No. 9, PageID #54; ECF No. 24, PageID #2608–09.) Accordingly, the Magistrate Judge reviewed the petition on its merits. Petitioner objects to the Magistrate Judge's determination that Mr. Austin failed to establish ineffective assistance of appellate counsel. (ECF No. 26.) This objection is made in two parts. First, Petitioner objects to the Magistrate Judge's determination that prosecutorial misconduct did not occur. Second, Petitioner objects to the Magistrate Judge's finding

8

that Petitioner was not prejudiced by the prosecutorial misconduct at issue. (ECF No. 26, PageID #2627.)

To support his claim of ineffective assistance of appellate counsel, Petitioner contends that prosecutorial misconduct occurred when the prosecutor vouched for Henderson's testimony in closing argument. (ECF No. 1, PageID #5.) Petitioner cites the prosecutor's statements that "Adrian Henderson [was] telling the truth" (ECF No. 10-1, PageID #2326) and his other arguments about Henderson's credibility (ECF No. 21, PageID #2). Petitioner contends that his appellate lawyer failed to raise this error on appeal.

## I. Ineffective Assistance of Appellate Counsel

Both the State courts and the Magistrate Judge found that Petitioner's claim of ineffective assistance of appellate counsel lacked merit. (ECF No. 10, PageID #405-12; ECF No. 24, PageID #2618.) Under *Strickland v. Washington*, 466 U.S. 668, 687 (1994), Petitioner must establish that (1) the performance of counsel was deficient, showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment, and (2) the ineffectiveness of the counsel prejudiced the petitioner's defense. This standard also applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). "[E]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 582 U.S. 521, 533 (2017). Counsel performs deficiently in declining to raise an issue on appeal only where the issue he failed to raise is clearly stronger than the claims actually raised. *Id.* To establish prejudice for ineffective appellate counsel, a petitioner must show that, but

9

for his counsel's "unreasonable failure to raise a claim, he would have prevailed on his appeal." *Gordon v. May*, No. 22-4003, 2023 WL 3719069, at *4 (6th Cir. Apr. 25, 2023) (citation omitted).

**I.A. Improper Vouching**

The Magistrate Judge determined that Petitioner failed to show that appellate counsel's performance fell below an objective standard of reasonableness. (ECF No. 24, PageID #2620.) In her view, the State courts applied the correct legal standard for ineffective assistance of appellate counsel, and Petitioner could not make out a claim for prosecutorial misconduct. (*Id.*, PageID #2618–19.) The record confirms that the prosecutor did not engage in improper vouching, which involves implying that additional evidence not placed before the jury supports a defendant's guilt, arguing based on the personal credibility or belief of a prosecutor or investigator about the guilt of the accused, or engaging in similar practices that undermine the role of the jury as the finder of the facts based on the evidence presented in court. *See, e.g.*, *United States v. Reynolds*, 86 F.4th 332, 352 (6th Cir. 2023).

In closing argument, the record shows that the prosecutor stayed on the correct side of the line between merely summarizing and commenting on the evidence and improper vouching. He told the jury: "Adrian Henderson was corroborated on multiple counts" (ECF No. 10-1, PageID #2328); "Adrian Henderson was further corroborated by W.B. and C.B." and "by the ballistic evidence in this case" (*id.*, PageID #2329–31); "R.E. again corroborates A.H" (*id.*, PageID #2335); and "[a]t no point was [Henderson] inconsistent. Not one single inconsistency," (*id.*, PageID #2458). This argument summarized the evidence for the jury and left the jury as the finder of fact

10

to reach its own decision based on the evidence it saw and heard pursuant to the State trial court's instructions.

Petitioner objects that analysis of this argument failed to account for his inability to cross-examine Henderson at trial. But he points to no decision of the Supreme Court clearly establishing that an inability to cross-examine affects the analysis such that a failure to analyze the matter appropriately in the State courts entitles him to habeas relief. Even accounting for his inability to cross-examine Henderson, in closing argument defense counsel had the same opportunity to highlight problems with Henderson's credibility. (ECF No. 10-1, PageID #2409–10.) Defense counsel pointed out that Henderson has "a prior conviction" and that he received "a deal" for testifying. (*Id.*) Further, to the extent that Petitioner challenges his inability to cross-examine the witness, at an evidentiary hearing the State trial court found that Mr. Austin forfeited his confrontation right. That issue is not before the Court in these habeas proceedings.

In one case, the prosecutor arguably crossed the line into improper vouching. Regarding another witness, he said that the testimony was "bulletproof. Because it was the truth. The truth doesn't change, lies change." (ECF No. 10-1, PageID #2347.) In context, that argument might in the courtroom have been heard and understood the same way as his statements about Henderson's testimony: the record supported the testimony of the witness. On the other hand, it might have been heard as the prosecutor placing his credibility behind that of the witness.

11

Whatever the case, whether the prosecutor actually engaged in misconduct by vouching for the credibility of Henderson or any other witness has little bearing on the Sixth Amendment claim here. Petitioner does not seek habeas relief based on prosecutorial misconduct but ineffective assistance of appellate counsel. Therefore, the Court need not analyze under Section 2254(d) whether the determination in the State courts of whether improper vouching occurred was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

### I.B. Cause and Prejudice

Instead, the question is whether appellate counsel made errors so serious that he did not function as the counsel that the Sixth Amendment guarantees. *Strickland*, 466 U.S. at 687. Petitioner argues that his appellate counsel failed to raise the vouching claim and that, absent this failure, the outcome of the appeal would have been different. (ECF No. 26, PageID #2624.) In her report and recommendation, the Magistrate Judge determined that Petitioner failed to show that appellate counsel's performance fell below an objective standard of reasonableness to his prejudice. (ECF No. 24, PageID #2620.)

Even if meritorious, appellate counsel cannot be faulted for declining to assign improper vouching as error on appeal. After all, trial counsel interposed no objection to that argument, leaving only plain-error review available on direct appeal. Review of the trial record fails to show a violation of Petitioner's substantial rights through any improper vouching that might have occurred. Additionally, counsel enjoy the presumption that they discharge their duties in a sufficiently effective manner and

12

exercise reasonable professional judgment based on the circumstances at the time. *Id.* at 690. Faced with plain-error review of a claim for prosecutorial misconduct, appellate counsel made a reasonable strategic or tactical decision to advance other arguments more likely to succeed. Nothing in the record overcomes this presumption or shows that the State courts applied the *Strickland* standard unreasonably or contrary to clearly established law.

Finally, Petitioner objects to the Magistrate Judge's determination that Mr. Austin was not prejudiced by his appellate counsel's failure to raise improper vouching on direct appeal. (ECF No. 26, PageID #2627; ECF No. 24, PageID #2618.) In the face of the other evidence of guilt, Petitioner cannot make a showing of prejudice either under the standard for prosecutorial misconduct or ineffective assistance of counsel, let alone that the State courts unreasonably applied clearly established federal law in their adjudication.

## II.     Certificate of Appealability

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C.S. § 2253(c)(2). To obtain a certificate of appealability, a petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). Under this standard, Petitioner does not qualify for a certificate of appealability. Therefore, the Court declines to issue one.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections (ECF No. 26), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 24), and **DENIES** and **DISMISSES** the petition for a writ of habeas corpus. Further, the Court **DECLINES** to issue a certificate of appealability under 28 U.S.C. § 2253(c).

**SO ORDERED.**

Dated: May 2, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio